UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - x
                         :

UNITED STATES OF AMERICA,
                         :

         - v. -                09 Cr. 555 (HB)
                         :

OMAR MARTINEZ,
WILKIN AQUINO, and      :
LILIA RENTAS,
                         :
         Defendants.

- - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW OF THE UNITED STATES OF AMERICA
IN OPPOSITION TO WILKIN AQUINO'S OMNIBUS MOTION**

PREET BHARARA
United States Attorney
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

TELEMACHUS P. KASULIS
MICHELLE K. PARIKH
Assistant United States Attorneys
     -Of Counsel-

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . ii

PRELIMINARY STATEMENT. . . . . . . . . . . . . . . . . . . .1

BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . .1

APPLICABLE LEGAL PRINCIPLES . . . . . . . . . . . . . . . . 5

     A.   Because Aquino Failed To Create an Issue of Fact,
        Aquino's Arguments To Suppress Evidence Should
        Be Denied Without a Hearing . . . . . . . . . . . 5

     B.   The Traffic Stop of the Defendant Was Lawful
        Because the Officers Had Reasonable Suspicion
        or Probable Cause To Believe that a Traffic
        Violation Had Occurred . . . . . . . . . . . . . . 7

     C.   The Officers Had Probable Cause To Arrest
        the Defendant . . . . . . . . . . . . . . . . . .11

     D.   The Narcotics Seized Following the Defendant's
        Arrest Were in Plain View . . . . . . . . . . . .15

     E.   The Search of Aquino's Residence Was Lawful
        Because Aquino Gave Valid Consent To Search
        His Residence . . . . . . . . . . . . . . . . . .18

     F.   In Addition, the Officers' Entry Into Aquino's
        Residence Was Justified by Exigent Circumstances . . 21

     G.   The Defendant Is Not Entitled to Disclosure
        of Government Witnesses or Unindicted
        Co-Conspirators . . . . . . . . . . . . . . . . .22

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . .25

TABLE OF AUTHORITIES

Abel v. United States, 362 U.S. 217 (1960) . . . . . . . . . 17

Adams v. Williams, 407 U.S. 143 (1972) . . . . . . . . . . 13

Arizona v. Gant, -- U.S. --, 129 S. Ct. 1710 (2009) . . . . . 17

Atwater v. City of Lago Vista, 532 U.S. 318 (2001) . . . . . 14

California v. Hodari D., 499 U.S. 621 (1991) . . . . . . . . . 9

County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) . . . . 9

Craig v. Singletary, 127 F.3d 1030 (11th Cir. 1997) . . . . . 13

Dorman v. United States, 435 F.2d 385 (D.C. Cir. 1970) . . . 21

Florida v. Jimeno, 500 U.S. 248 (1991) . . . . . . . . . 18, 19

Harris v. United States, 390 U.S. 234 (1968) . . . . . . . 15

Hill v. California, 401 U.S. 797 (1971) . . . . . . . . . . 12

Holeman v. City of New London, 425 F.3d 184 (2d Cir. 2005)  7, 18

Horton v. California, 496 U.S. 128 (1990) . . . . . . . . . 15

Illinois v. Gates, 462 U.S. 213 (1983) . . . . . . . 11, 12, 16

Krause v. Bennett, 887 F.2d 362 (2d Cir. 1989) . . . . . . . 16

Lipton v. Nature Co., 71 F.3d 464 (2d Cir. 1995) . . . . . . . 6

Maryland v. Pringle, 540 U.S. 366 (2003) . . . . . . . . . 12

McCray v. Illinois, 386 U.S. 300 (1967) . . . . . . . . . . 24

Ornelas v. United States, 517 U.S. 690 (1996) . . . . . . . 11

Rovario v. United States, 353 U.S. 53 (1957) . . . . . . . . 23

Schmerber v. California, 384 U.S. 757 (1966) . . . . . . . . 21

Schneckloth v. Bustamonte, 412 U.S. 218 (1973) . . . . . . . 18

Tenenbaum v. Williams, 193 F.3d 581 (2d Cir. 1999) . . . . . 13

Terry v. Ohio, 392 U.S. 1 (1968) . . . . . . . . . . . . . 8, 9

Texas v. Brown, 460 U.S. 730 (1983) . . . . . . . . . . . . 16

United States v. Abuhamra, 389 F.3d 309 (2d Cir. 2004) . . . 23

United States v. Arango-Correa, 851 F.2d 54 (2d Cir. 1988) . 19

United States v. Arvizu, 534 U.S. 266 (2002) . . . . . . . . 16

United States v. Asibor, 109 F.3d 1023 (5th Cir. 1997) . . . 20

United States v. Baldwin, 496 F.3d 215 (2d Cir. 2007) . 9, 10, 14

United States v. Blue, 78 F.3d 56 (2d Cir. 1996) . . . . 18, 19

United States v. Campbell, 581 F.2d 22 (2d Cir. 1978) . . . . 21

United States v. Crespo, 834 F.2d 267 (2d Cir. 1987) . . . . 20

United States v. Cruz, 834 F.2d 47 (2d Cir. 1987) . . . . 11, 12

United States v. Dhinsa, 171 F.3d 721 (2d Cir.1998) . . . . 7, 8

United States v. Duckett, 583 F.2d 1309 (5th Cir. 1978) . . . 16

United States v. Fields, 113 F.3d 313 (2d Cir.), cert. denied,
522 U.S. 976 (1997) . . . . . . . . . . . . . . . . . . 22-24

United States v. Garcia, 56 F.3d 418 (2d Cir. 1995) . . . 19, 20

United States v. Gaskin, 364 F.3d 438 (2d Cir. 2004) . . . . 17

United States v. Gillette, 383 F.2d 843 (2d Cir. 1967) . . 5, 6

United States v. Grubczak, 793 F.2d 458 (2d Cir. 1968) . . . 15

United States v. Hooper, 935 F.2d 484 (2d Cir. 1991) . . . . . 8

United States v. Kornblau, 586 F. Supp. 614 (S.D.N.Y. 1984) . . 5

United States v. Lavan, 10 F. Supp. 2d 377 (S.D.N.Y. 1998) . 19

United States v. MacDonald, 916 F.2d 766 (2d Cir. 1990) . . . 21

United States v. Mathurin, 148 F.3d 68 (2d Cir. 1998) . . . . . 5

United States v. Mire, 51 F.3d 349 (2d Cir. 1995) . . . . . . 19

United States v. Moreno, 897 F.2d 26 (2d Cir. 1990) . . . . . 16

United States v. Mottley, 130 Fed. Appx. 508 (2d Cir. 2005) . . 6

United States v. Ochs, 595 F.2d 1247 (2d Cir. 1979) . . . 13, 15

United States v. Ortiz, 99 Cr. 532 (DC), 1999 WL 1095592
(S.D.N.Y. Dec. 3, 1999) . . . . . . . . . . . . . . . . . . 5

United States v. Padilla, 986 F. Supp. 163 (S.D.N.Y. 1997) . 15

United States v. Patrick, 899 F.2d 169 (2d Cir. 1990) . . . . 11

United States v. Pena, 961 F.2d 333 (2d Cir. 1992) . . . . 5, 6

United States v. Saa, 859 F.2d 1067 (2d Cir. 1988) . . . . . 22

United States v. Scopo, 19 F.3d 777 (2d Cir. 1994)   7, 8, 13, 14

United States v. Stewart, 551 F.3d 187 (2d Cir. 2009) . . . . . 7

United States v. Taylor, 707 F. Supp. 696 (S.D.N.Y. 1989) . . 24

United States v. Viscioso, 711 F. Supp. 740 (S.D.N.Y. 1989) . . 5

United States v. Washington, 12 F.3d 1128 (D.C. Cir. 1994) . . 9

Whren v. United States, 517 U.S. 806, 813 (1996) . . . . . . . 8

## PRELIMINARY STATEMENT

The Government respectfully submits this memorandum of law in response to the omnibus motion of defendant Wilkin Aquino ("Aquino" or "the defendant") seeking an order (1) suppressing evidence recovered by Drug Enforcement Administration ("DEA") law enforcement agents (collectively, "the Officers") at or around the time of the defendant's arrest; (2) suppressing evidence seized from the defendant's residence located at 78 Chestnut Street, Garfield, New Jersey ("Aquino Residence"); and (3) requiring the Government to disclose the identity of any confidential informant or co-conspirator. With regard to Aquino's arguments to suppress evidence, because the defendant has failed to place any factual issue in dispute through an affidavit, this portion of the defendant's motion should be denied without a hearing. In the alternative, the Court should reject Aquino's argument to suppress evidence following a hearing because the searches and seizures at issue did not violate the Fourth Amendment. Finally, the defendant's argument that the identity of any confidential informant or co-conspirator should be disclosed should be denied.

## BACKGROUND

Wilkin Aquino, Omar Martinez and Lilia Rentas were charged in a one-count indictment with conspiring to distribute and possess with the intent to distribute cocaine and cocaine base, more commonly known as "crack", in violation of 21 U.S.C.

§§ 812, 841(a)(1), 841(b)(1)(A) and 846.  A copy of the
indictment is attached as Exhibit A.  Should the court determine
that a hearing is necessary, the Government expects that the
evidence presented at the September 23, 2009 hearing will show
the following:

The DEA began investigating Aquino and his co-
defendants based on information that the defendants may have been
involved in violations of federal narcotics laws.  On May 2,
2009, DEA agents were surveilling the residence of Lilia Rentas,
one of Aquino's co-defendants, on Martin Street in Patterson, New
Jersey ("the Martin Street Residence").  Aquino was seen leaving
the Martin Street Residence and driving to a nearby location,
where he met with other individuals in parked cars.  Some time
later, Aquino returned to the Martin Street Residence, and then
left again and drove to a different residence on 28th Street in
Patterson, New Jersey ("the 28th Street Residence").  Aquino
entered the 28th Street Residence and later exited the residence.
When Aquino exited the 28th Street Residence, DEA agents observed
him carrying a bag.  Agents had seen Aquino with this bag
previously during surveillance.

Aquino entered his car and drove away from the 28th
Street Residence.  DEA Task Force Officers Anthony Fasolas and
Jose Garcia followed Aquino in separate unmarked vehicles.
Shortly after Aquino left the 28th Street Residence, Officers

Fasolas and Garcia observed Aquino commit a traffic violation. Officer Fasolas turned on his siren and overhead lights, indicating that he wanted Aquino to pull over.

Aquino pulled over briefly, but then drove off at a high rate of speed. Officer Garcia followed Aquino in close pursuit, with Officer Fasolas behind Officer Garcia. Officer Garcia followed Aquino through a number of turns onto different streets and witnessed Aquino commit a number of additional traffic infractions during the high-speed chase. At some point, Officer Fasolas lost Aquino and Officer Garcia. Shortly thereafter, Aquino turned onto a street and his car almost collided with Officer Fasolas's car. Aquino jumped out of the car while it was still in motion, taking the bag with him, and attempted to flee on foot. The vehicle, still moving after Aquino's exit, crashed into a parked car. Aquino tripped and dropped the bag but continued to run away from the Officers.

Approximately one block away, Officers Fasolas and Garcia apprehended Aquino and handcuffed him with the assistance of DEA Task Force Officer Jeffrey Van Peenan. Officers Garcia and Van Peenan placed Aquino in the back of a patrol car. Officer Fasolas returned to the car abandoned by Aquino, and saw the bag lying on the ground, with several brick-shaped items wrapped in tape sticking out. The items appeared to Officer Fasolas, in his training and experience, to be individually-

packaged kilograms of narcotics.  There were eight such wrapped items.  Officer Fasolas then collected the bricks and the bag and searched Aquino's vehicle.

Aquino was transported back to the Martin Street Residence, where the arrests of co-defendants Rentas and Martinez were taking place.  Officers Van Peenan and Garcia spoke with Aquino outside the Martin Street Residence in English and Spanish.  Aquino consented to a search of the Aquino Residence. Prior to Aquino giving his consent to the Officers, he had been read his <u>Miranda</u> rights.

Officers Fasolas and Garcia proceeded to the Aquino Residence.  They knocked on the door and announced their presence several times.  No one came to the door, but the Officers heard voices inside.  Fearing that evidence was being destroyed, the Officers gained entry to the Aquino Residence and discovered the television was on but that the residence was vacant.  The Officers searched the location and seized several items, including thousands of dollars in cash.

The packages found in the bag outside Aquino's vehicle, when opened, were found to contain a white powdery substance.  A field test of the contents of the packages revealed the presence of cocaine in the contents of the packages.  Approximately 8 kilograms of cocaine were contained in the packages.

## APPLICABLE LEGAL PRINCIPLES

**A.    Because Aquino Failed To Create an Issue of Fact, Aquino's Arguments To Suppress Evidence Should Be Denied Without a Hearing**

A defendant seeking the suppression of evidence is not automatically entitled to an evidentiary hearing on his claim, but must first "state sufficient facts which, if proven, would [require] the granting of the relief requested." United States v. Kornblau, 586 F. Supp. 614, 621 (S.D.N.Y. 1984)(internal quotation and citation omitted); see United States v. Mathurin, 148 F.3d 68, 69 (2d Cir. 1998); United States v. Ortiz, 99 Cr. 532 (DC), 1999 WL 1095592, at *1 (S.D.N.Y. Dec. 3, 1999).  To meet this burden, a defendant must present his claim through an affidavit of an individual with personal knowledge of the relevant facts.  See United States v. Gillette, 383 F.2d 843, 848-49 (2d Cir. 1967); United States v. Viscioso, 711 F. Supp. 740, 745 (S.D.N.Y. 1989).  In such an affidavit, the defendant must show "that disputed issues of material fact exist before an evidentiary hearing is required." Viscioso, 711 F. Supp. at 745 (internal quotation and citation omitted).  An evidentiary hearing on a motion to suppress is required only if "the moving papers are sufficiently definite, specific, detailed, and nonconjectural to enable the court to conclude that contested issues of fact" are in question.  United States v. Pena, 961 F.2d

333, 339 (2d Cir. 1992) (internal quotation and citations omitted).

Moreover, statements offered by an attorney do not create an issue of fact.  See Gillette, 383 F.2d at 848 (holding that statement submitted by attorney did not raise a factual issue where it did not allege personal knowledge on the part of the attorney); Lipton v. Nature Co., 71 F.3d 464, 469 (2d Cir. 1995) ("Mere conclusory allegations or denials in legal memoranda or oral argument are not evidence and cannot by themselves create a genuine issue of material fact where none would otherwise exist.")(internal quotation and citations omitted); United States v. Mottley, 130 Fed. Appx. 508, 510 (2d Cir. 2005) (summary order)("The statements offered on the matter by Mottley's attorney in the reply brief before the district court likewise did not create an issue of fact.").

In this case, Aquino failed to submit an affidavit raising any factual dispute with the Government's sworn testimony in the form of the Complaint providing the basis for the charges at issue (the Complaint is attached hereto as Exhibit B). Defense counsel has submitted a certification of counsel providing a summary version of the facts, which is not based on personal knowledge and therefore does not comport with the law of this Circuit.  Because the defendant has failed to create an

issue of fact, the defendant is not entitled to a hearing on his suppression claims.[1]

**B.    The Traffic Stop of the Defendant Was Lawful Because the Officers Had Reasonable Suspicion or Probable Cause To Believe that a Traffic Violation Had Occurred**

"An ordinary traffic stop constitutes a limited seizure within the meaning of the Fourth and Fourteenth Amendments." United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994) (footnote omitted)(quoting United States v. Hassan El, 5 F.3d 726, 729 (4th Cir. 1993)).  A violation of vehicle and traffic laws may give rise to a valid stop under the Fourth Amendment whenever the officers have probable cause or a reasonable suspicion, based on specific and articulable facts, of such an infraction.  Scopo, 19 F.3d at 781; United States v. Stewart, 551 F.3d 187, 193 (2d Cir. 2009); Holeman v. City of New London, 425 F.3d 184, 189 (2d Cir. 2005).  Even a minor traffic offense, such as changing lanes without signaling, is sufficient to justify stopping the driver of a vehicle.  Scopo, 19 F.3d at 782 (quoting United States v. Cummins, 920 F.2d 498, 500 (8th Cir. 1990)).

"It does not matter whether the stop was on account of the traffic violation, because reasonableness is evaluated from an objective standard." Holeman, 425 F.3d at 190 n.1 (citing United States v. Dhinsa, 171 F.3d 721, 725 (2d Cir.1998) ("an

_____

[1]  The Government sets forth Sections B through F of this brief in the event that the Court finds a hearing appropriate at this time.

7

observed traffic violation legitimates a stop even if the
detectives do not rely on the traffic violation") and <u>Whren</u> v.
<u>United States</u>, 517 U.S. 806, 813 (1996)).  For example, in <u>Scopo</u>,
the Second Circuit found that "a valid basis for detention and
search . . . is not rendered invalid by the fact that police
resort to a pretext for one purpose or another to continue that
detention and search."  19 F.3d at 784.  Therefore, an officer
may use the pretext of a valid traffic infraction to stop and
detain the driver of a vehicle even if the officer's motivation
for the stop is his subjective belief that the driver has taken
part in a more serious crime.  <u>Id.</u> at 783-84.  The relevant
question for the Court is whether the officer <u>could</u> validly have
made the stop, not whether under the same circumstances a
reasonable officer <u>would</u> have made the stop.  <u>Id.</u> at 784.  Simply
put, the only question here is whether the Officers observed a
traffic violation.  <u>See</u> <u>Dhinsa</u>, 171 F.3d at 724-25.

In addition, "[a] 'seizure' for the purposes of the
fourth amendment is not defined by whether an individual has
halted his forward progress in response to police conduct, but
rather is defined by the coercive nature of the police conduct."
<u>United States</u> v. <u>Hooper</u>, 935 F.2d 484, 489 (2d Cir. 1991).  "Only
when [an] officer, by means of physical force or show of
authority, has in some way restrained the liberty of a citizen
may [the court] conclude that a 'seizure' has occurred."  <u>Terry</u>

v. Ohio, 392 U.S. 1, 19 n.16 (1968).  If the police make a show of authority but the suspect does not submit, there is no seizure.  See California v. Hodari D., 499 U.S. 621, 626 (1991) (arrest requires "either physical force . . . or, where that is absent, submission to the assertion of authority"); County of Sacramento v. Lewis, 523 U.S. 833, 844 (1998) ("[A] police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment.").  "[T]o comply with an order to stop—and thus to become seized—a suspect must do more than halt temporarily; he must submit to police authority, for 'there is no seizure without actual submission.'" United States v. Baldwin, 496 F.3d 215, 218 (2d Cir. 2007) (quoting Brendlin v. California, 551 U.S. 249 (2007)); see also United States v. Washington, 12 F.3d 1128, 1132 (D.C. Cir. 1994) ("[Defendant] initially stopped, but he drove off quickly before [the officer] even reached the car.  Because [defendant] did not submit to [the officer's] order, he was not seized . . . .").

     As the Government anticipates the evidence will show at a hearing should the Court determine that a hearing is necessary, the Officers had probable cause to believe that the defendant committed a traffic violation, justifying the stop of Aquino's car.  Thus, Officer Fasolas was squarely within the bounds of the Fourth Amendment when he attempted to stop Aquino's car.

Moreover, even if the Officers did not have probable cause to attempt to stop Aquino for a traffic violation—which they did—the Officers' actions were lawful because Aquino fled from the Officers first in his car and later on foot, and therefore was not "seized" within the meaning of the Fourth Amendment.  Aquino then committed a host of traffic violations during the high-speed chase and eventual crash.

In determining the lawfulness of the Officers' actions, the Second Circuit's decision in <u>Baldwin</u> is instructive.  There, officers pulled over a vehicle after pursuing it with their overhead lights and siren on.  496 F.3d at 217.  After the car pulled over, the officers instructed the defendant to show his hands, but he refused to comply.  <u>Id.</u>  The officers twice repeated their command for the defendant to show his hands, drew their weapons, and one officer approached the passenger side of the defendant's vehicle.  <u>Id.</u>  The defendant then drove away. <u>Id.</u>  On those facts, where the defendant actually pulled his car over and was subjected to the officers' drawn weapons, the Second Circuit refused to find that the temporary stop constituted submission, and thus, a seizure.  <u>See</u> <u>id.</u> at 219.  Here, in contrast, the defendant momentarily stopped his car before driving away at a high rate of speed.  The defendant was not seized until the Officers caught up to him on foot and placed him under arrest.

**C.    The Officers Had Probable Cause To Arrest the Defendant**

A warrantless arrest such as the ones in this case is fully justified if there is "probable cause when the defendant is put under arrest to believe that an offense has been or is being committed." United States v. Cruz, 834 F.2d 47, 50 (2d Cir. 1987).  Probable cause exists "if the law enforcement official, on the basis of the totality of the circumstances, has sufficient knowledge or reasonably trustworthy information to justify a person of reasonable caution in believing that an offense has been or is being committed by the person to be arrested."  United States v. Patrick, 899 F.2d 169, 171 (2d Cir. 1990) (citing, inter alia, Brinegar v. United States, 338 U.S. 160, 175-76 (1949), and Illinois v. Gates, 462 U.S. 213, 230-32 (1983)).

Probable cause is a "commonsense, nontechnical" concept that is determined by "the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act."  Ornelas v. United States, 517 U.S. 690, 695 (1996) (internal quotation and citation omitted).  As the Supreme Court explained in Gates:

> The process [of determining probable cause]
> does not deal with hard certainties, but with
> probabilities. Long before the law of
> probabilities was articulated as such,
> practical people formulated certain
> common-sense conclusions about human
> behavior; jurors as factfinders are permitted
> to do the same – and so are law enforcement
> officers. Finally, the evidence thus
> collected must be seen and weighed not in

11

> terms of library analysis by scholars, but as
> understood by those versed in the field of
> law enforcement.

462 U.S. at 231-32 (internal quotation and citation omitted).  As

a result, "it is clear that only the probability, and not a prima

facie showing, of criminal activity is the standard of probable

cause." Id. at 235 (internal quotation and citation omitted);

see also Hill v. California, 401 U.S. 797, 804 (1971)

("[S]ufficient probability, not certainty, is the touchstone of

reasonableness under the Fourth Amendment"); Cruz, 834 F.2d at 50

(to establish probable cause, "it is not necessary to make a

prima facie showing of criminal activity or to demonstrate that

it is more probable than not that a crime has been or is being

committed") (internal quotation and citation omitted); Maryland

v. Pringle, 540 U.S. 366, 371 (2003) ("The probable-cause

standard is incapable of precise definition or quantification

into percentages because it deals with probabilities . . . . We

have stated . . . that [t]he substance of all the definitions of

probable cause is a reasonable ground for belief of guilt.")

(internal quotation and citations omitted).

     The presence or absence of probable cause must be determined

from the totality of the circumstances.  See Gates, 462 U.S. at

238.  That determination is inherently fact-specific, and does

not lend itself to the formulation or application of specific

rules or tests.  Thus, the Second Circuit has explained that

"[p]robable cause is a flexible term. There is no rigid demand that specific tests be satisfied." Tenenbaum v. Williams, 193 F.3d 581, 603 (2d Cir. 1999) (internal quotation and citation omitted). Moreover, the information known to the officers at the time need not appear sufficient to support a conviction, or even be admissible in court. See Adams v. Williams, 407 U.S. 143, 149 (1972) ("Probable cause does not require the same type of specific evidence of each element of the offense as would be needed to support a conviction. Rather, the court will evaluate generally the circumstances at the time of the arrest to decide if the officer had probable cause for his action.") (citation omitted).

Moreover, "[p]robable cause issues are to be decided on an objective basis by courts without regard to the subjective beliefs of law enforcement officers, whatever those beliefs may have been." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (en banc); see also United States v. Scopo, 19 F.3d 777, 783 (2d Cir. 1994) (analysis of Fourth Amendment issues involves "an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time and not on the officer's actual state of mind at the time the challenged action was taken") (internal quotation and citations omitted); United States v. Ochs, 595 F.2d 1247, 1256 (2d Cir. 1979) ("[T]he test is what could lawfully be done, not what the policemen

13

thought the source of their power to be."). Thus, as the Second Circuit explained in Scopo, so long as the arresting officer had probable cause to believe an offense was being committed, and "was authorized by state or municipal law to effect a custodial arrest for the particular offense, the resulting arrest will not violate the fourth amendment." 19 F.3d at 784.

As the Government anticipates the evidence will show at a hearing should the Court determine that a hearing is necessary, by the time that the defendant was arrested, he had committed numerous traffic violations, caused his car to crash into a parked vehicle and fled the scene, and fled from law enforcement both in his vehicle and on foot. As a result, the Officers had probable cause to arrest the defendant for either the traffic violations or the flight, or both. See, e.g., Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (law enforcement authorized to arrest if he has probable cause to believe that an individual has committed an offense, "even a very minor criminal offense in his presence"); Baldwin, 496 F.3d at 219-20 (holding that defendant's behavior prior to his arrest, which included flight from law enforcement, crashing his car and fleeing from law enforcement officers on foot provided law enforcement with probable cause to arrest the defendant once he was apprehended).

14

**D.    The Narcotics Seized Following the Defendant's Arrest Were
       in Plain View**

"It has long been settled that objects falling in the
plain view of an officer who has a right to be in the position to
have that view are subject to seizure and may be introduced into
evidence." Harris v. United States, 390 U.S. 234, 236 (1968)
(citations omitted). As the Second Circuit has noted, "it would
outrage common sense and human nature to read the Fourth
Amendment to require that after having [identified incriminating
evidence], the police should be required to interrupt their work
and apply for a warrant before going further . . . ." United
States v. Ochs, 595 F.2d 1247, 1259 (2d Cir. 1979). The "plain
view" exception to the warrant requirement thus requires that:
(1) the agents have lawful access to the place from which the
item can be plainly viewed; (2) the objects seized are in plain
view at the time they are discovered; and (3) it is "immediately
apparent" to law enforcement at the time of the discovery that
the item constitutes evidence or fruit of a crime. Horton v.
California, 496 U.S. 128, 136 (1990).

For an item's criminal nature to be "immediately
apparent," a reasonable agent must conclude that there is
"probable cause" to believe that the item constitutes evidence or
fruit of a crime, without conducting some further search of the
object. United States v. Grubczak, 793 F.2d 458, 461 (2d Cir.
1968); United States v. Padilla, 986 F. Supp. 163, 169 (S.D.N.Y.

15

1997) (citing <u>Minnesota</u> v. <u>Dickerson</u>, 508 U.S. 366, 375 (1993));
<u>see also</u> <u>United States</u> v. <u>Duckett</u>, 583 F.2d 1309, 1313 (5th Cir.
1978) (sufficient "if it is immediately apparent to the police
officer that he has evidence before him").

      In making this determination, the court is to consider
whether probable cause exists from the perspective of a law
enforcement officer.  <u>United States</u> v. <u>Moreno</u>, 897 F.2d 26, 33
(2d Cir. 1990), <u>abrogated on other grounds as recognized by</u>
<u>Ruggiero</u> v. <u>Krzeminski</u>, 928 F.2d 558 (2d Cir. 1991).  Probable
cause "merely requires that the facts available . . . would
warrant a man of reasonable caution in the belief" that items may
be evidence of criminal activity; "it does not demand any showing
that such belief be correct or more likely true than false."
<u>Texas</u> v. <u>Brown</u>, 460 U.S. 730, 742 (1983) (internal quotation and
citation omitted).  Moreover, it is not negated by an innocent
explanation for any one, if not all, of the component facts.  <u>See</u>
<u>United States</u> v. <u>Arvizu</u>, 534 U.S. 266, 274-75 (2002); <u>Krause</u> v.
<u>Bennett</u>, 887 F.2d 362, 372 (2d Cir. 1989); <u>see also</u> <u>Illinois</u> v.
<u>Gates</u>, 462 U.S. 213, 245 n.13 (1983) ("In making a determination
of probable cause the relevant inquiry is not whether particular
conduct is 'innocent' or 'guilty,' but the degree of suspicion
that attaches to particular types of non-criminal acts.").

      As the Government anticipates the evidence will show at
a hearing should the Court determine that a hearing is necessary,

16

upon return to Aquino's vehicle, Officer Fasolas saw wrapped

packages sticking out of the bag that Aquino had been carrying.[2]

Officer Fasolas recognized those tape-wrapped, brick-shaped

packages, from his training and experience, to be narcotics.

Accordingly, law enforcement was permitted to seize the bag and

its contents without a warrant.[3]

---

[2] Even if the narcotics had not been in plain view—which
they were—Officer Fasolas would still have authority to seize the
bag and its contents because Aquino had abandoned the bag in his
flight from the Officers.  It is well-established that, where a
defendant has abandoned property, the Fourth Amendment is not
offended by a subsequent warrantless search of that property.
See Abel v. United States, 362 U.S. 217, 240-41 (1960)
(warrantless seizure of abandoned property does not violate the
Fourth Amendment).

[3] The Government believes that the evidence will show that
upon finding the narcotics outside Aquino's car, Officer Fasolas
conducted a search of Aquino's vehicle.  This search was
permissible without a warrant because it was a lawful search
incident to arrest.  "Police may search a vehicle incident to a
recent occupant's arrest . . . if the arrestee is within reaching
distance of the passenger compartment at the time of the search
or it is reasonable to believe the vehicle contains evidence of
the offense of arrest."  Arizona v. Gant, -- U.S. --, 129 S. Ct.
1710, 1723 (2009).  The Officers were also permitted to search
Aquino's car without a warrant pursuant to the automobile
exception to the warrant requirement.  United States v. Gaskin,
364 F.3d 438, 456 (2d Cir. 2004) ("Under the 'automobile
exception' to the Fourth Amendment warrant requirement, police
may conduct a warrantless search of a readily mobile motor
vehicle if probable cause exists to believe the vehicle contains
contraband or other evidence of a crime.").  In any event, the
Government does not intend to introduce any evidence uncovered
from Officer Fasolas's search of Aquino's vehicle at trial.

**E.    The Search of Aquino's Residence Was Lawful Because Aquino Gave Valid Consent To Search His Residence**

The Fourth Amendment does not generally prohibit searches and seizures, only "unreasonable" searches and seizures. U.S. Const. amend. IV; <u>United States</u> v. <u>Blue</u>, 78 F.3d 56, 59 (2d Cir. 1996). The Supreme Court and Second Circuit have established that in determining the reasonableness of a given search, a court must "balance[] the intrusion on an individual's Fourth Amendment interests against the legitimate government interest in conducting the search under the circumstances." <u>Blue</u>, 78 F.3d at 59 (citing <u>Maryland</u> v. <u>Buie</u>, 494 U.S. 325, 331 (1990)). Although a warrant and probable cause are often necessary in order to render a search reasonable, "[i]t is ... well settled that one of the specifically established exceptions to the requirements of both a warrant and probable cause is a search that is conducted pursuant to consent." <u>Schneckloth</u> v. <u>Bustamonte</u>, 412 U.S. 218, 219 (1973). <u>See also</u> <u>Florida</u> v. <u>Jimeno</u>, 500 U.S. 248, 250-51 (1991) ("[W]e have long approved consensual searches because it is no doubt reasonable for the police to conduct a search once they have been permitted to do so.") (citing <u>Schneckloth</u>, 412 U.S. at 219); <u>Holeman</u>, 425 F.3d 184, 191 (2d Cir. 2005) ("One such exception [to the Fourth Amendment's protection against warrantless searches] is consent by a party whose property or person is to be searched.") (citing <u>United States</u> v. <u>Elliott</u>, 50 F.3d 180, 185 (2d Cir. 1995)).

There are no magic words that are needed to establish consent to a search. See, e.g., United States v. Mire, 51 F.3d 349, 351-52 (2d Cir. 1995) (per curiam) (response of "take a look" constituted consent to search extending to containers within a bag). Rather, "the ultimate question presented is whether the officer had a reasonable basis for believing that there had been consent to the search." United States v. Garcia, 56 F.3d 418, 423 (2d Cir. 1995) (internal quotation and citation omitted). In making that determination, courts ask "what would the typical reasonable person have understood by the exchange between the officer and the suspect?" Jimeno, 500 U.S. at 251 (citations omitted).

Some of the factors that bear upon the voluntariness of the consent include "whether the defendant was in custody and in handcuffs, whether there was a show of force, whether the agents told the defendant that a search warrant would be obtained, whether the defendant had knowledge of the right to refuse consent, and whether the defendant previously had refused to consent," United States v. Lavan, 10 F. Supp. 2d 377, 384 (S.D.N.Y. 1998) (citations omitted), as well as the length of detention and the nature of the questioning, see United States v. Arango-Correa, 851 F.2d 54, 57 (2d Cir. 1988) (five-hour detention did not vitiate consent where defendant was well treated and "not subjected to the kind of intensive interrogation

19

over many hours or days which would overwhelm the frightened prisoner").

The Government does not have an affirmative duty to advise a suspect that he may refuse to consent to a search. United States v. Crespo, 834 F.2d 267, 271-72 (2d Cir. 1987) (citing Schneckloth, 412 U.S. at 218); see also Garcia, 56 F.3d at 422 ("[K]nowledge of the right to refuse consent is not a requirement to a finding of voluntariness."). Furthermore, voicing belief that officers will not find any contraband signals voluntary consent. See United States v. Asibor, 109 F.3d 1023, 1039 & n.16 (5th Cir. 1997) (defendant's wife's consent to search home was voluntary where wife stated that she did not "have anything to hide").

As the Government anticipates the evidence will show at a hearing should the Court determine that a hearing is necessary, Aquino's consent to search his residence was voluntary based on the nature and circumstances of the Officers' questions of and interactions with Aquino. The Government expects that the following factors will establish the voluntariness of Aquino's consent: (1) the conversation between Aquino and the Officers in which Aquino gave his consent to search his residence was brief and not preceded by interrogation or other questioning; (2) there was no show of force or weapons drawn, nor did the Officers raise their voices to Aquino prior to his consent; and (3) Aquino

immediately consented to the search and told the Officers that they would not find anything if they searched his residence.

**F.    In Addition, the Officers' Entry into Aquino's Residence Was Justified by Exigent Circumstances.**

"[T]he test for determining whether a warrantless entry is justified by exigent circumstances is an objective one . . . ." United States v. MacDonald, 916 F.2d 766, 769 (2d Cir. 1990). The district court must determine, considering the totality of the circumstances of the particular case, "whether law enforcement agents were confronted by an 'urgent need' to render aid or take action". Id. (quoting Dorman v. United States, 435 F.2d 385, 391 (D.C. Cir. 1970) (en banc)).  One factor that justifies a warrantless search pursuant to the exigent circumstances exception is where there is the threat of destruction of evidence.  See Schmerber v. California, 384 U.S. 757, 770 (1966).

In this case, "the dangers of harm to law enforcement agents [and] . . . of the loss of evidence . . . [was] aggravated by the additional time required for" obtaining a warrant warranted the immediate entry into Aquino's residence.  Id.; United States v. Campbell, 581 F.2d 22, 26 (2d Cir. 1978).

As the Government anticipates the evidence will show at a hearing should the Court determine that a hearing is necessary, the Officers announced their presence at the Aquino Residence several times, but no one answered.  Hearing voices within the

residence, law enforcement feared that their safety could be compromised and evidence could be destroyed within the Aquino Residence.  Under these circumstances, exigent circumstances warranted the Officers' actions in entering the Aquino Residence.

**G.    The Defendant Is Not Entitled to Disclosure of Government Witnesses or Unindicted Co-Conspirators.**

Finally, Aquino speculates that an "informant" may have "contacted the defendant and arranged for the drug transaction in cooperation with law enforcement, and was also present at the scene and was an active participant in the commission of the offenses charged", and seeks the disclosure of that individual's identity.  However, Aquino has not provided the basis for his belief of the existence of this informant, nor has he made any effort to explain how disclosure of such a person's identity is an issue related to suppression, as opposed to trial.

"The government is not generally required to disclose the identity of confidential informants."  United States v. Fields, 113 F.3d 313, 324 (2d Cir.), cert. denied, 522 U.S. 976 (1997)(citing Roviaro v. United States, 353 U.S. 53, 59 (1957)).  See also United States v. Saa, 859 F.2d 1067, 1073 (2d Cir. 1988)("disclosure of the identity or address of a confidential informant is not required unless the informant's testimony is shown to be material to the defense") (citations omitted).  Rule 16 of the Federal Rules of Criminal Procedure has not been interpreted to require the Government to disclose the identity of

a confidential informant other than in exceptional circumstances. See <u>Fields</u>, 113 F.3d at 324.

  The identity of confidential informants is protected under the well-established "informant privilege," which is grounded in the "government's strong and legitimate interest in protecting confidential sources from premature identification . . . . Identification not only compromises the government's ability to use such sources in other investigations, it may expose them to retaliation by those against whom they have cooperated." <u>United States</u> v. <u>Abuhamra</u>, 389 F.3d 309, 324-25 (2d Cir. 2004); <u>see also</u> <u>Fields</u>, 113 F.3d at 324 (observing that the Government's "interest in protecting the anonymity of informants who furnish information regarding violations of law is strong—withholding an informant's identity improves the chances that such a person will continue providing information and encourages other potential informants to aid the government"). While the informant privilege is not absolute, and must ultimately give way where necessary to ensure a defendant a fair trial, <u>see</u> <u>Rovario</u> v. <u>United States</u>, 353 U.S. 53, 60-61 (1957), "[o]utside the trial context . . ., specifically in proceedings in which hearsay evidence may be received and in which the defendant's 'guilt or innocence' is not the issue to be resolved, the privilege will generally be upheld against due process and confrontation challenges." <u>Abuhamra</u>, 389 F.3d at 325 (citing <u>McCray</u> v.

23

<u>Illinois</u>, 386 U.S. 300, 313-14 (1967); <u>Fields</u>, 113 F.3d at 324
("The need for disclosure [of an informant's identity] is far
less compelling when, as here, it is sought in connection with a
pretrial suppression hearing on issues which do not bear on
defendant's guilt.").

"The defendant bears the burden of showing the need for
disclosure of an informant's identity, and to do so must
establish that, absent such disclosure, he will be deprived of
his right to a fair trial." <u>Fields</u>, 113 F.3d at 324 (citations
omitted). Moreover, courts in this Circuit have recognized that
issues of witness safety are of particular concern in narcotics
cases. <u>See, e.g.</u>, <u>United States</u> v. <u>Taylor</u>, 707 F. Supp. 696, 703
(S.D.N.Y. 1989) (noting, where defendant requested a witness
list, that "[e]specially in narcotics cases . . . the dangers of
witness intimidation, subordination of perjury or actual injury
to witnesses are great").

The defendant has not met his burden of showing that
without disclosure, he will be deprived of a fair trial, and as a
result, Aquino's request for the disclosure of the identity of
any confidential informant or co-conspirator should be denied.

## CONCLUSION

Based on the foregoing authority, the Government respectfully submits that the Court should deny Aquino's motion without a hearing. In the alternative, the Government respectfully submits that, after considering the evidence presented at the September 23, 2009 hearing, the Court should deny Aquino's motion to suppress evidence seized at the time of Aquino's arrest and from the Aquino Residence and for the disclosure of the identity of any confidential informant or unidentified co-conspirator.

Dated:    New York, New York
          September 16, 2009

Respectfully submitted,

PREET BHARARA
United States Attorney for the
Southern District of New York

By: /s/ Michelle K. Parikh
    Telemachus P. Kasulis/
    Michelle K. Parikh
    Assistant United States
    Attorneys
    (212) 637-2411/1071

25

<u>CERTIFICATE OF SERVICE</u>

I, Michelle K. Parikh, declare that I am employed in the Office of the United States Attorney for the Southern District of New York, and on September 16, 2009, I caused a copy of the attached Government's Response to Defendant Aquino's Omnibus Motion to be served by electronic notification to the following counsel:

Kevin G. Roe, Esq.

I declare under penalty of perjury that the foregoing is true and correct.  28 U.S.C. Section 1746.

Dated:    New York, New York
          September 16, 2009

/s/ Michelle K. Parikh
Michelle K. Parikh
Assistant United States Attorney